**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | § |
| | § Chapter 11 |
| | § |
| **PETROQUEST ENERGY, INC.,** *et al.*, | § Case No. 18-36322 (DRJ) |
| | § |
| **Debtors.**[1] | § (Jointly Administered) |
| | § |

**DEBTORS' EMERGENCY MOTION FOR AN ORDER
ESTABLISHING PROCEDURES FOR SALES OF CERTAIN
MISCELLANEOUS ASSETS OUTSIDE THE ORDINARY COURSE OF
BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**

**THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE CONDUCTED ON THIS MATTER ON NOVEMBER 27, 2018, AT 12:00 P.M. CT IN COURTROOM 400, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: PetroQuest Energy, Inc. (0714), PetroQuest Energy, L.L.C. (2439), TDC Energy LLC (8877), PetroQuest Oil & Gas, L.L.C. (1170), PQ Holdings LLC (7576), Pittrans Inc. (1747), and Sea Harvester Energy Development, L.L.C. (5903). The address of the Debtors' headquarters is: 400 E. Kaliste Saloom Road, Suite 6000, Lafayette, Louisiana 70508.

6920158v4

**To the Honorable David R. Jones,**
**Chief United States Bankruptcy Judge:**

PetroQuest Energy, Inc. ("PetroQuest") and certain of its affiliates and subsidiaries, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), file this motion (the "Motion") pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"), rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(i) of the Bankruptcy Local Rules (the "Bankruptcy Local Rules") to sell miscellaneous assets free and clear of all liens, claims, and encumbrances.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(N). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for relief are section 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and Bankruptcy Local Rule 9013-1(i).

## EMERGENCY CONSIDERATION

3.      The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i). The Debtors have an offer to sell excess office furniture at a price that they believe is the highest and best offer that they will receive. In order to ensure that the Debtors do not lose the buyer and the sale, the Debtors request emergency relief. The Consenting Creditors have consented to the Court hearing the Motion on November 27, 2018.

## BACKGROUND

4.      On November 7, 2018 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

6920158v4

5.      The Chapter 11 Cases are jointly administered for procedural purposes only. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. As of the filing of this Motion, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee").

6.      The Debtors are an independent oil and gas company created in 1998 through a reverse merger involving Optima Petroleum Corp. and American Explorer, L.L.C., and are engaged in the exploration, development, acquisition and operation of oil and gas properties in Texas and Louisiana, primarily in the Cotton Valley, Gulf Coast Basin, and Austin Chalk plays. The Debtors maintain offices in Lafayette, Louisiana and The Woodlands, Texas.

7.      Additional information regarding the Debtors and the Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of the Chapter 11 Cases, is set forth in the *Declaration of J. Bond Clement in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 21] (the "First Day Declaration").[2]

## RELIEF REQUESTED

**A.      Miscellaneous Assets**

8.      In the ordinary course of their business operations, the Debtors have accumulated and are currently in possession of certain assets, including, but not limited to, equipment, furniture, supplies, fixtures, and other miscellaneous personal property (collectively, the "Miscellaneous Assets"), that may not be necessary for the operation of the Debtors' businesses. In the exercise of their sound business judgment, the Debtors have determined that the prompt sale of the Miscellaneous Assets, without the need for motions, hearings and subsequent Court approval, subject to certain procedures set forth herein, is in the best interest of the Debtors'

---

[2]      Capitalized terms not otherwise defined herein have the meaning ascribed to them in the First Day Declaration.

6920158v4

stakeholders, and will enable the Debtors to maximize the value of the Miscellaneous Assets. The Debtors desire to sell the Miscellaneous Assets in order to, among other things, eliminate costs associated with maintaining unnecessary assets, and to preserve and maximize the value of their estates.

9.      The Miscellaneous Assets have a modest value in relation to the Debtors' overall business operations. The Debtors believe that the asset sale procedures set forth below will conserve the resources of both this Court and the Debtors by avoiding the need for numerous motions to approve relatively modest sales. The Debtors submit that the entry of an order authorizing the sale of the Miscellaneous Assets without further notice or hearing, other than as set forth below, is warranted under these circumstances and in furtherance of the Debtors' efforts to successfully prosecute these Chapter 11 Cases.

**B.      Miscellaneous Asset Sale Procedures**

10.      In connection with the sale of the Miscellaneous Assets, the Debtors seek authorization to sell such Miscellaneous Assets (each, a "Proposed Miscellaneous Asset Sale") pursuant to the following procedures (collectively, the "Miscellaneous Asset Sale Procedures"):[3]

    a)      If the sale consideration from a purchaser of the Miscellaneous Assets does not exceed $15,000, on a per-transaction basis, and if the sale is not to an insider (as defined in section 101(31) of the Bankruptcy Code), the Debtors may sell the assets upon providing written notice of the asset to be sold, the proposed purchase price, and the buyer's name, via electronic mail or facsimile, to (i) the U.S. Trustee, (ii) counsel to the Consenting Creditors, (iii) counsel to the Prepetition Term Loan Agent, (iv) counsel to the Indenture Trustee, (v) counsel to any statutory committee appointed in these Chapter 11 Cases; (vi) the United States Attorney's Office for the Southern District of Texas, and (vii) all known parties holding or asserting liens, claims, encumbrances or other interests in the assets being sold and their respective counsel, if known (collectively, the "Notice Parties"), which shall have three (3) business days (unless extended by agreement from the Debtors) from the date of such notice to inform the Debtors in writing that they object to the proposed sale described in this subparagraph; provided,

---

[3]      Nothing in this Motion, the Proposed Order or the Miscellaneous Asset Sale Procedures shall prohibit the Debtors from filing one or more motions to approve a sale of assets.

however, that to the extent the aggregate sale consideration for any single transaction or series of related transactions to a single buyer or group of related buyers exceeds $15,000, but is less than $250,000, the procedures in subparagraph (b) below shall apply. If no written objection is received from the Notice Parties, the Debtors may consummate the Proposed Miscellaneous Asset Sale, without further notice to any other party and without the need for a hearing or further Court order. If a timely written objection is received from any Notice Party, the Debtors shall comply with the procedures set forth in subparagraph (e) below. Any proposed sale of Miscellaneous Assets where the aggregate sale consideration is equal to or greater than $250,000 will require a separate motion.

b)       If the sale consideration from a purchaser for the Miscellaneous Assets, on a per-transaction basis, exceeds $15,000, but is less than $250,000, or if the sale is to an insider (as defined in section 101(31) of the Bankruptcy Code), the Debtors will file with the Court a notice, substantially in the form attached as **Exhibit 1** to the Proposed Order, of such Proposed Miscellaneous Asset Sale (a "Miscellaneous Asset Sale Notice") and serve such Miscellaneous Asset Sale Notice by email, if available, and overnight delivery on the Notice Parties and those parties, as of the date of such notice, who have filed in these Chapter 11 Cases a notice of appearance and request for service of papers pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Rule 2002 Parties").

c)       The Miscellaneous Asset Sale Notice, to the extent that the Debtors have such information, will include: (i) a description of the Miscellaneous Assets that are the subject of the Proposed Miscellaneous Asset Sale; (ii) the location of the Miscellaneous Assets; (iii) the economic terms of sale; (iv) the identity of any non-Debtor party to the Proposed Miscellaneous Asset Sale and specify whether that party is an "affiliate" or "insider" as those terms are defined under section 101 of the Bankruptcy Code; and (v) the identity of the party, if any, holding liens, claims, encumbrances or other interests in the Miscellaneous Assets.

d)       The Notice Parties and the Rule 2002 Parties shall have seven (7) business days (unless extended by agreement from the Debtors) after the Miscellaneous Asset Sale Notice is filed and served to advise counsel to the Debtors in writing with specific and particular bases that they object to the Proposed Miscellaneous Asset Sale described in such Miscellaneous Asset Sale Notice (as used in these Miscellaneous Asset Sale Procedures, the "Objection Deadline"). If no written objection is received by the Objection Deadline, the Debtors may consummate the Proposed Miscellaneous Asset Sale, without further notice to any other party and without the need for a hearing or further Court order.

e)       If a written objection to a Proposed Miscellaneous Asset Sale is timely received by the Objection Deadline, the Debtors will not proceed with the Proposed Miscellaneous Asset Sale unless: (i) the objection is withdrawn or otherwise resolved; or (ii) the Court approves the Proposed Miscellaneous Asset Sale at the next hearing in these Chapter 11 Cases that is agreed to by the objecting party and the Debtors.

f)      All buyers will acquire the Miscellaneous Assets sold by the Debtors pursuant to these Miscellaneous Asset Sale Procedures on an "AS IS-WHERE IS" basis without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended or any other purposes; provided, however, that buyers will take title to the Miscellaneous Assets free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code, with all such liens, claims, encumbrances and other interests, if any, to attach to the proceeds of the sale of the Miscellaneous Assets, with the same validity, force, and effect which they had against such Miscellaneous Assets prior to the sale.

g)      Good faith purchasers of the Miscellaneous Assets shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

11.     The absence of a timely objection to the sale of the Miscellaneous Assets in accordance with the Miscellaneous Asset Sale Procedures shall be "consent" to such sale within the meaning of section 363(f)(2) of the Bankruptcy Code.

## BASIS FOR RELIEF

### A.      The Sale of Miscellaneous Assets is an Ordinary Course Transaction

12.     Section 363(c) of the Bankruptcy Code provides that a debtor "may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). A transaction is in the ordinary course of business if it is "of the sort commonly undertaken by companies in [the debtor's] industry" and it does not subject a hypothetical creditor "to economic risk of a nature different from those he accepted when he decided to extend credit." *In re Roth Am., Inc.*, 975 F.2d 949, 952–53 (3d Cir. 1992).

13.     Selling Miscellaneous Assets is in the ordinary course of the Debtors' business and the Debtors and similar companies in the industry often sell such assets when they are no longer needed. Accordingly, the Debtors respectfully submit that the Court should approve the

sale of the proposed sale procedures as involving ordinary course transactions under section 363(c)(1) of the Bankruptcy Code.

**B.      The Sales of the Miscellaneous Assets is an Exercise of the Debtors' Sound Business Judgment**

14.      To the extent any sale of Miscellaneous Assets in not in the ordinary course, section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991).

15.      The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith. *Abbotts Dairies*, 788 F.2d 143; *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa.

1989). A debtor's showing of a sound business purpose need not be unduly exhaustive; rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *Lionel*, 722 F.2d at 1071; *Montgomery Ward*, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

16.     Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

6920158v4

17.     There is more than ample business justification for the approval of the Miscellaneous Asset Sale Procedures and the sales of the Miscellaneous Assets in accordance therewith. The Debtors submit that the sales of the Miscellaneous Assets will inure to the benefit of the Debtors' estates and creditors, as they will further the Debtors' efforts to successfully prosecute these Chapter 11 Cases and, therefore, represent the exercise of the Debtors' sound business judgment.

18.     The Debtors' proposed sales of the Miscellaneous Assets are in "good faith" within the meaning of the *Abbotts Dairies* analysis. The Debtors represent that no insider will gain an unfair advantage from the sales pursuant to the Miscellaneous Asset Sale Procedures. Moreover, as set forth above, the Debtors will provide the Notice Parties and the Rule 2002 Parties, as applicable, with a reasonable opportunity to review, among other things, the adequacy of the price to be received for any sale of Miscellaneous Assets in accordance with the Miscellaneous Asset Sale Procedures.

19.     The notice and objection procedures contained in the Miscellaneous Asset Sale Procedures are reasonable and justified under the circumstances of these Chapter 11 Cases. The Miscellaneous Asset Sale Procedures are designed to maximize the value realized from the sales of the Miscellaneous Assets. Additionally, the manner of notice proposed in the Miscellaneous Asset Sale Procedures is more than appropriate and preserves parties' due process rights. The Debtors will serve notice of each Proposed Miscellaneous Asset Sale on the Notice Parties and the Rule 2002 Parties, as applicable, as provided for in the Miscellaneous Asset Sale Procedures. As such, all of the key constituencies in these Chapter 11 Cases and any party whose rights may be affected by a proposed sale will receive adequate notice under the particular circumstances of the Proposed Miscellaneous Asset Sale.

20.     Because the sales of the Miscellaneous Assets are expected to be of a relatively *de minimis* value, the usual process of obtaining Court approval of each individual sale would impose unnecessary administrative burdens on the Court, would be prohibitively expensive to the Debtors' estates, and in some instances may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time. Finally, as noted above, the "notice and a hearing" requirement contained in section 363(b)(1) of the Bankruptcy Code is satisfied absent a hearing where there is an opportunity for a hearing and no party in interest timely requests a hearing. 11 U.S.C. § 102(1).

**C.      The Sales of the Miscellaneous Assets Should Be Approved Under Section 363(f) of the Bankruptcy Code**

21.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim or interest consents to such sale, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of a *bona fide* dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); *see In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met).

22.     The Consenting Creditors have consented to the sales of the Miscellaneous Assets pursuant to the Miscellaneous Asset Sale Procedures, and the Debtors do not expect any other Prepetition Secured Party[4] to object to the relief requested in this Motion. Accordingly, the

---

[4]     As defined in the *Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, and (III) Modifying the Automatic Stay* [Docket No. 53] (the "Interim Cash

requirements of section 363(f)(2) of the Bankruptcy Code would be met, and the proposed

dispositions of the Miscellaneous Assets should be approved "free and clear" of any such liens,

claims or interests, with any such liens to attach to the proceeds of the sale. Further, the Notice

Parties include all known parties holding or asserting liens, claims, encumbrances or other

interests in the assets being sold and their respective counsel, if known, and the Miscellaneous

Asset Sale Procedures provide that the absence of a timely objection to the sale of the

Miscellaneous Assets in accordance therewith shall be "consent" to such sale within the meaning

of section 363(f)(2) of the Bankruptcy Code.

**D.      Courts in this Circuit Have Approved Similar Procedures**

23.      In light of the benefits of streamlined procedures to sell Miscellaneous Assets and

the legal justifications described above, courts in this Circuit have approved procedures similar

to the Miscellaneous Asset Sale Procedures in other large chapter 11 cases. *See, e.g., In re

iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. June 21, 2018) (authorizing sales up to

$15 million without further court order); *In re Think Finance, LLC*, No. 17-33964 (HDH);

(Bankr. N.D. Tex. Nov. 17, 2017) (authorizing sales up to $100,000 on an expedited basis); *In re

CHC Group LTD.*, No. 16-31854 (BJH) (Bankr. N.D. Tex. Dec. 5, 2016) (authorizing sales up to

$10 million without further court order).

**WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

24.      Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or

lease of property other than cash collateral is stayed until the expiration of 14 days after entry of

the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the

relief that the Debtors seek in this Motion is necessary for the Debtors to maximize value for

their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day

---

Collateral Order").

6920158v4

stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

25.     Notice of this Motion shall be given to (a) the U.S. Trustee; (b) the Debtors' 30 largest unsecured creditors on a consolidated basis; (c) counsel to the Consenting Creditors; (d) counsel to the Prepetition Term Loan Agent; (e) counsel to the Indenture Trustee; (f) the official committee of unsecured creditors; (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service; and (j) any party required to be served under Bankruptcy Local Rule 9013-1(d). Due to the nature of the relief requested herein, the Debtors submit that no other or further notice need be provided.

## CONCLUSION

Accordingly, the Debtors request that the Court (i) approve the Motion as set forth above; and (ii) grant the Debtors other just relief.

November 21, 2018

**PORTER HEDGES LLP**

By:     _/s/ John F. Higgins_
       John F. Higgins (TX 09597500)
       Joshua W. Wolfshohl (TX 24038592)
       M. Shane Johnson (TX 24083263)
       1000 Main Street, 36th Floor
       Houston, Texas 77002
       Telephone: (713) 226-6000
       Fax: (713) 226-6248

       **PROPOSED COUNSEL FOR DEBTORS**
       **AND DEBTORS IN POSSESSION**

6920158v4