**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
12/04/2018

|  |  |
|---|---|
| **In re:** | § Chapter 11 |
| | § |
| **PETROQUEST ENERGY, INC.,** *et al.*, | § **Case No. 18-36322 (DRJ)** |
| | § |
| **Debtors.**[1] | § **(Jointly Administered)** |
| | § |

**FINAL ORDER
(I) AUTHORIZING USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
SECURED PARTIES, AND (III) MODIFYING THE AUTOMATIC STAY**
[Relates to Doc. No. 5]

The above-referenced debtors and debtors-in-possession (collectively, the "Debtors")

filed their motion (the "Motion")[2] for interim and final orders under Bankruptcy Code sections

105(a), 361, 362, 363, 503, 506, 507, and 552, Bankruptcy Rules 2002, 4001, 6003, 6004, 7062,

and 9014, Bankruptcy Local Rules 4001-1, 4002-1, and 9013-1(i), and the Complex Case

Procedures authorizing the Debtors to, among other things, (i) use Cash Collateral,[3] and (ii)

provide adequate protection, including modification of the automatic stay, and having sought,

among other things, the following relief:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: PetroQuest Energy, Inc. (0714), PetroQuest Energy, L.L.C. (2439), TDC Energy LLC (8877), PetroQuest Oil & Gas, L.L.C. (1170), PQ Holdings LLC (7576), Pittrans Inc. (1747), and Sea Harvester Energy Development, L.L.C. (5903). The address of the Debtors' headquarters is: 400 E. Kaliste Saloom Road, Suite 6000, Lafayette, Louisiana 70508.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[3]   For purposes of this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in Bankruptcy Code section 363, in which the Prepetition Secured Parties (as defined below) have a properly perfected lien or security interest (including, without limitation, any adequate protection liens or security interests), in each case whether existing on the Petition Date, arising pursuant to this Final Order, or otherwise. The Debtors represent and stipulate that all of the Debtors' cash, cash equivalents, negotiable instruments, investment property and securities, including the cash, cash equivalents, negotiable instruments, investment property and securities in its deposit accounts, wherever located constitute the Cash Collateral (or part of the Prepetition Collateral (as defined below)) of the Prepetition Secured Parties.

6916560v10

(a)      authorization, pursuant to Bankruptcy Code section 363, to use Cash Collateral, which Cash Collateral shall be used only in accordance with the budget agreed to by the Debtors and the Consenting Creditors (as such budget may be extended, varied, supplemented, or otherwise modified in accordance with the provisions of this Final Order (as defined below), the "Approved Budget"), subject only to the Permitted Variances (as defined below), and provide certain adequate protection to the Prepetition Secured Parties against the diminution in the value of their interest in the Prepetition Collateral, through the use, sale or lease of the Prepetition Collateral and/or the imposition of the automatic stay pursuant to Bankruptcy Code section 362;

(b)      approval pursuant to Bankruptcy Code sections 105, 361, 362, 363 and 507 of the form and manner of adequate protection being granted to the Prepetition Secured Parties who have been granted prepetition liens and security interests under the following documents:

(i)      that certain Multidraw Term Loan Agreement dated as of August 31, 2018 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Loan Agreement"), among PetroQuest Energy, Inc. ("PetroQuest"), PetroQuest Energy, L.L.C. ("PQE"), Wells Fargo Bank, National Association, as administrative agent (the "Prepetition Term Loan Agent"), and the lenders holding Term Loans (as defined therein) from time to time party thereto (the "Prepetition Term Loan Lenders");

(ii)      that certain Indenture dated as of February 17, 2016 (as amended, restated, supplemented, or otherwise modified from time to time, including by the First Supplemental Indenture dated as of September 13, 2016, collectively the "Prepetition Second Lien Indenture"), among PetroQuest, as issuer, Wilmington Trust, National Association, as Indenture Trustee and Collateral Trustee thereunder (in such capacity, the "Prepetition Second Lien Trustee"), and the guarantors from time to time party thereto, pursuant to which PetroQuest incurred indebtedness

2

to the holders (the "Prepetition Second Lien Noteholders") of the notes issued thereunder (the "Prepetition Second Lien Notes"); and

(iii)    that certain Indenture dated as of September 27, 2016 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Second Lien PIK Indenture" and, collectively with the Prepetition Term Loan Agreement and the Prepetition Second Lien Indenture, the "Prepetition Agreements"), among PetroQuest, as issuer, Wilmington Trust, National Association, as Indenture Trustee and Collateral Trustee thereunder (in such capacity, the "Prepetition Second Lien PIK Trustee" and, together with the Prepetition Second Lien Trustee, the "Indenture Trustee"), and the guarantors from time to time party thereto, pursuant to which PetroQuest incurred indebtedness to the holders (the "Prepetition Second Lien PIK Noteholders", and combined with the Prepetition Second Lien Noteholders, the "Combined Prepetition Second Lien Noteholders") of the notes issued thereunder (the "Prepetition Second Lien PIK Notes"). For purposes of this Final Order, the Prepetition Term Loan Lenders, the Combined Prepetition Second Lien Noteholders, the Prepetition Term Loan Agent, and the Indenture Trustee are referred to collectively as the "Prepetition Secured Parties";

(c)    approval of the stipulations by the Debtors as set forth in this Final Order with respect to the Prepetition Agreements and the liens and security interests arising therefrom;

(d)    upon entry of this Final Order, and to the extent set forth herein, the waiver of (i) any right to surcharge the Prepetition Collateral pursuant to Bankruptcy Code section 506(c) or other applicable law and (ii) any rights of the Debtors under the "equities of the case" exception set forth in Bankruptcy Code section 552(b);

(e)    modification of the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms of this Final Order; and

(f)      waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Final Order;

and due, proper and sufficient notice of the Motion, the interim hearing on the Motion (the "Interim Hearing"), and the final hearing on the Motion (the "Final Hearing") having been given under the circumstances and the opportunity for objection having been provided; and the Interim Hearing having been held on November 7, 2018; and the Interim Order having been entered on November 7, 2018 [Docket No. 53] granting the relief sought by the Motion on an interim basis; and the Final Hearing having been held on November 27, 2018; and it appearing that no other or further notice is necessary with respect to the Court's entry of this Final Order; and after considering all of the pleadings filed with this Court; and upon the *Declaration of J. Bond Clement in Support of Chapter 11 Petitions and First Day Pleadings* filed contemporaneously with the Motion, the evidence submitted, and the record made at the Interim Hearing and the Final Hearing; and this Court having heard and resolved or overruled all objections to the relief requested in the Motion; and this Court having noted the appearances of certain parties in interest; and it appearing that the relief requested in the Motion, as modified herein, is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.      Disposition. The Motion is granted on a final basis in accordance with the terms of this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights included

---

[4]      In accordance with Bankruptcy Rule 7052, any proposed finding of fact more properly classified as a proposed legal conclusion shall be deemed as such, and any proposed conclusion of law more properly classified as a proposed factual finding shall also be deemed as such.

therein, are hereby denied and overruled. This Final Order shall become effective immediately upon its entry.

B.      <u>Petition Date</u>. On November 6, 2018 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing these Chapter 11 Cases. On November 7, 2018, this Court entered an order approving the joint administration of these Chapter 11 Cases [Docket No. 24]. The Debtors are continuing to operate their businesses and manage their affairs as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. The official committee of unsecured creditors (the "<u>Committee</u>") was appointed on November 20, 2018 [Docket No. 141]. No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      <u>Jurisdiction; Venue</u>. This Court has jurisdiction over these Chapter 11 Cases, the Motion, the parties, and the Debtors' property pursuant to 28 U.S.C. §§ 157(b)(2)(M) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M). The Court may enter a final order consistent with Article III of the United States Constitution.

D.      <u>Notice</u>. Notice of the Final Hearing on this Final Order and the relief requested in the Motion has been provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules and the Complex Case Procedures, and is sufficient under the circumstances. Without limiting the foregoing, due notice was provided to parties in interest, including: (i) the U.S. Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) each of the Prepetition Secured Parties and their respective counsel; (iv) counsel to the Committee; (v) the Securities and Exchange Commission; (vi) the Environmental Protection Agency and similar environmental state agencies for states in which the Debtors conduct business; (vii) the United States Attorney's Office for the Southern

6916560v10

District of Texas; (viii) the Internal Revenue Service; (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service; and (x) any party required to be served under Bankruptcy Local Rule 9013-1(d).

        E.    <u>Debtors' Stipulations</u>. The Debtors acknowledge, admit, represent, stipulate, and agree that, subject to paragraph 9 of this Final Order, and after consultation with their attorneys and financial advisors:

        (i)    <u>Description of Prepetition Secured Obligations</u>.

        (a)    <u>Prepetition Term Loan Obligations</u>. Prior to the Petition Date, PQE entered into the Prepetition Term Loan Agreement in the aggregate principal amount of $50,000,000. Each of PetroQuest and TDC Energy, LLC ("<u>TDC</u>") provided an unconditional joint and several guaranty of the Prepetition Term Loan Obligations (as defined below) arising under the Prepetition Term Loan Agreement. As of the Petition Date, PQE, TDC, and PetroQuest were liable to the Prepetition Term Loan Lenders and the Prepetition Term Loan Agent pursuant to the Prepetition Term Loan Agreement, without defense, counterclaim, offset, claim or cause of action of any kind, for (I) the aggregate principal amount of not less than $50,000,000 in respect of loans made (plus accrued and unpaid interest thereon) and (II) unpaid fees, expenses, disbursements, indemnifications, obligations, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Prepetition Term Loan Agreement or applicable law (collectively, the "<u>Prepetition Term Loan Obligations</u>"). As of the Petition Date, the Consenting Prepetition Term Loan Lenders (as defined below) held 100% of the loans forming part of the Prepetition Term Loan Obligations.

        (b)    <u>Second Lien Notes Obligations</u>. Prior to the Petition Date, PetroQuest issued the Prepetition Second Lien Notes to the Prepetition Second Lien Noteholders

in the aggregate principal amount of $144,674,000. Each of PQE and TDC provided an unconditional joint and several guaranty of the Prepetition Second Lien Notes Obligations (as defined below) arising under the Prepetition Second Lien Indenture. As of the Petition Date, PetroQuest, PQE, and TDC were liable to the Prepetition Second Lien Noteholders pursuant to the Prepetition Second Lien Indenture without defense, counterclaim, offset, claim or cause of action of any kind, for (I) the aggregate principal amount of not less than $9,427,000 in respect of the Prepetition Second Lien Notes and (II) unpaid fees, expenses, disbursements, indemnifications, obligations, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Prepetition Second Lien Indenture or applicable law (collectively, the "Prepetition Second Lien Notes Obligations"). As of the Petition Date, the Combined Consenting Second Lien Noteholders held Prepetition Second Lien Notes Obligations in an amount no less than $7,343,000.

(c)     Second Lien PIK Notes Obligations. Prior to the Petition Date, PetroQuest issued the Prepetition Second Lien PIK Notes to the Prepetition Second Lien PIK Noteholders in the aggregate principal amount of $243,468,000. Each of PQE and TDC provided an unconditional joint and several guaranty of the Prepetition Second Lien PIK Notes Obligations (as defined below) arising under the Prepetition Second Lien PIK Indenture. As of the Petition Date, PetroQuest, PQE, and TDC were liable to the Prepetition Second Lien PIK Noteholders pursuant to the Prepetition Second Lien PIK Indenture without defense, counterclaim, offset, claim or cause of action of any kind, for (I) the aggregate principal amount of not less than $275,045,768 in respect of the Prepetition Second Lien PIK Notes and (II) unpaid fees, expenses, disbursements, indemnifications, obligations, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Prepetition

7

Second Lien PIK Indenture or applicable law (collectively, the "Prepetition Second Lien PIK Notes Obligations" and, collectively with the Prepetition Term Loan Obligations and the Prepetition Second Lien Notes Obligations, the "Prepetition Secured Obligations"). As of the Petition Date, the Combined Consenting Second Lien Noteholders held Prepetition Second Lien PIK Notes Obligations in an amount no less than $194,559,842.

           (ii)    Validity of Prepetition Secured Obligations and Prepetition Agreements.

           (a)    The Prepetition Secured Obligations constitute legal, valid and binding obligations of PQE, PetroQuest, and TDC, as applicable (collectively, the "Obligors"). No offsets, defenses, or counterclaims to, or claims or causes of action that could reduce the amount or ranking of, the Prepetition Secured Obligations exist. No portion of the Prepetition Secured Obligations is subject to setoff, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether equitable, contractual or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any applicable domestic or foreign law or regulation by any person or entity. The Prepetition Agreements are valid and enforceable by each of the applicable Prepetition Secured Parties against each of the applicable Obligors.

           (b)    The Prepetition Secured Obligations constitute allowed claims against the applicable Obligors' estates. As of the Petition Date, the Debtors and their estates have no claim or cause of action against any of the Prepetition Secured Parties or their agents, in such capacities, whether arising under applicable state, federal, or foreign law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to Bankruptcy Code sections 105, 510 or 542 through 553) or whether

8

arising in connection with the Prepetition Agreements (or the transactions contemplated thereunder), the Prepetition Secured Obligations, or the Prepetition Liens (as defined below).

    (iii)    <u>Description of Prepetition Liens and Prepetition Collateral</u>.

    (a)    Pursuant to and as more particularly described in the Prepetition Term Loan Agreement, the Prepetition Term Loan Obligations are secured by, among other things, first priority liens and security interests (subject to Permitted Liens (as defined below)) in (the "<u>Prepetition Term Loan Liens</u>") certain property described in the Prepetition Term Loan Agreement and the Security Documents (as defined in the Prepetition Term Loan Agreement), including, without limitation, certain Cash Collateral and other "Collateral" as such term is defined in the Prepetition Term Loan Agreement (collectively, the "<u>Prepetition Term Loan Collateral</u>").

    (b)    Pursuant to and as more particularly described in the Prepetition Second Lien Indenture, the Prepetition Second Lien Notes Obligations are secured by, among other things, second priority liens and security interests (subject to Permitted Liens) in (the "<u>Prepetition Second Lien Notes Liens</u>") certain property described in the Prepetition Second Lien Indenture and the Security Documents (as defined in the Prepetition Second Lien Indenture), including, without limitation, certain Cash Collateral and other "Collateral" as such term is defined in the Prepetition Second Lien Indenture (collectively, the "<u>Prepetition Second Lien Notes Collateral</u>").

    (c)    Pursuant to and as more particularly described in the Prepetition Second Lien PIK Indenture, the Prepetition Second Lien PIK Notes Obligations are secured by, among other things, second priority liens and security interests (subject to Permitted Liens) in (the "<u>Prepetition Second Lien PIK Notes Liens</u>" and, together with the Prepetition

Term Loan Liens and the Prepetition Second Lien Notes Liens, the "<u>Prepetition Liens</u>") certain property described in the Prepetition Second Lien PIK Indenture and the Security Documents (as defined in the Prepetition Second Lien PIK Indenture), including, without limitation, certain Cash Collateral and other "Collateral" as such term is defined in the Prepetition Second Lien PIK Indenture (collectively, the "<u>Prepetition Second Lien PIK Notes Collateral</u>" and, together with the Prepetition Term Loan Collateral and the Prepetition Second Lien Notes Collateral, the "<u>Prepetition Collateral</u>").

   (iv) <u>Validity and Perfection of Prepetition Liens</u>. The Prepetition Liens are (A) valid, binding, enforceable, nonavoidable, and properly perfected liens on and security interests in the applicable Prepetition Collateral, (B) not subject to, pursuant to the Bankruptcy Code or other applicable domestic or foreign law, avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, setoff, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity, and (C) subject and subordinate only to those liens explicitly permitted by the Prepetition Agreements (to the extent any such permitted liens were valid, properly perfected, non-avoidable liens senior in priority to the Prepetition Liens on the Petition Date) (the "<u>Permitted Liens</u>"), if any.

   (v) <u>No Control of Debtors</u>. None of the Prepetition Secured Parties are or shall be deemed to be control persons or insiders of the Debtors by virtue of any of the actions taken by such parties in respect of or in connection with the Prepetition Secured Obligations or the Prepetition Agreements.

(vi)    No Other Liens. As of the Petition Date, there were no other perfected liens on or security interests in the Prepetition Collateral except for the Prepetition Liens and the Permitted Liens.

(vii)    Releases by Debtors. Subject to the rights and limitations set forth in paragraph 9 hereof, upon the occurrence of the Investigation Termination Date (as defined below), each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs, subsidiaries, and assigns shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, acquit, relinquish, waive, and discharge each of the Prepetition Secured Parties, in all capacities under the Prepetition Agreements and applicable law, and each of their respective current and former direct and indirect affiliates, subsidiaries, equityholders, members, partners, professionals, principals, attorneys, accountants, investment bankers, consultants, agents, advisors, other representatives, employees, directors, and officers (including their respective equityholders, members, partners, subsidiaries, affiliates, funds, managers, officers, directors, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives), each in their respective capacities as such (collectively, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every types, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description based on

11

or arising from any events, facts, or circumstances that have occurred or exist as of the date of this Final Order arising from or relating in any way to any of the Prepetition Agreements or the obligations thereunder, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all claims or causes of action arising under the Bankruptcy Code, and (c) any and all claims or causes of action regarding the validity, priority, enforceability, perfection, or avoidability of the Prepetition Liens or Prepetition Secured Obligations of the Prepetition Secured Parties. The Debtors further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Secured Obligations that the Debtors now have or may claim to have against the Released Parties arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the Court entering this Final Order.

                F.        <u>Findings Regarding the Use of Cash Collateral</u>.

                (a)      <u>Good and Sufficient Cause</u>. Good cause has been shown for entry of this Final Order. Absent entry of this Final Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed. The Debtors' use of Cash Collateral has been deemed sufficient to meet the Debtors' postpetition liquidity needs, subject to the terms of the Approved Budget.

                (b)      <u>Immediate Need for Use of Cash Collateral</u>. The Debtors have an immediate and critical need to use the Cash Collateral to operate their businesses, to maintain business relationships with employees, vendors, suppliers, and customers, to make payroll, to make capital expenditures, to satisfy the costs of administration of these Chapter 11 Cases, and to provide for other working capital and operational needs. The Court concludes that entry of this Final Order is in the best interests of the Debtors, their estates, and their creditors as

12

its implementation will, among other things, allow for access to the liquidity necessary for the continued operation of the Debtors' businesses, maximize the Debtors' enterprise value for all constituencies, preserve the Debtors' assets for the benefit of their creditors and their estates, and further enhance the Debtors' prospects for a successful restructuring.

(c)     <u>Consent of the Prepetition Secured Parties</u>. The Prepetition Term Loan Lenders who have executed the RSA (as defined below) (the "<u>Consenting Prepetition Term Loan Lenders</u>") and the Combined Prepetition Second Lien Noteholders who have executed the RSA (the "<u>Combined Consenting Second Lien Noteholders</u>", and collectively with the Consenting Prepetition Term Loan Lenders, the "<u>Consenting Creditors</u>"), subject to entry of this Final Order, have consented to the Debtors' proposed use of Cash Collateral in accordance with the Approved Budget.  The Prepetition Term Loan Agent and the Indenture Trustee did not object to the Debtors' proposed use of Cash Collateral in accordance with this Final Order and the Approved Budget.

(d)     <u>Entitlement to Adequate Protection</u>. The Prepetition Secured Parties are entitled to the adequate protection provided in this Final Order as and to the extent set forth herein pursuant to Bankruptcy Code sections 361, 362, and 363. The terms of the adequate protection package provided herein are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, are consistent with and authorized by the Bankruptcy Code, and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral; <u>provided</u>, <u>however</u>, that nothing in this Final Order shall (I) be construed as the affirmative consent by any of the Prepetition Secured Parties to the use of the Prepetition Collateral other than on the terms set forth in this Final Order, (II) be construed as consent by any Prepetition Secured Party to the terms of any financing or any other lien encumbering the

13

Prepetition Collateral (whether senior, *pari passu*, or junior) not specifically permitted under this Final Order, or (III) prejudice, limit, or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different, or additional adequate protection or any rights of the Debtors, the Committee, or any party in interest to oppose such additional relief.

        G.    <u>Use of Cash Collateral</u>. The Debtors are hereby authorized, subject to the terms and conditions of this Final Order, and subject to the Approved Budget, to use Cash Collateral for, among other things, (i) the costs of administering these Chapter 11 Cases, including the satisfaction of administrative costs and expenses of the Debtors incurred in these Chapter 11 Cases, (ii) any payments authorized by any order of this Court, including first-day related relief subject to the terms thereof, (iii) the Debtors' ongoing working capital needs during the pendency of these Chapter 11 Cases, (iv) funding the Carve-Out (as defined below), and (v) other general corporate purposes. Except on the terms and conditions of this Final Order, the Debtors shall be enjoined and prohibited from using the Cash Collateral at any time absent further order of this Court.

        H.    <u>Restructuring Support Agreement</u>. The Debtors and the Consenting Creditors have entered into that certain Restructuring Support Agreement (the "<u>RSA</u>"), dated as of November 6, 2018, which contains the parties' agreements and undertakings with respect to the Debtors' restructuring.

        I.    <u>Sections 506(c) and 552(b)</u>. Upon entry of this Final Order, each of the Prepetition Secured Parties shall be entitled to a waiver of (a) the provisions of Bankruptcy Code section 506(c) and (b) any "equities of the case" claims under Bankruptcy Code section 552(b).

6916560v10

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED:**

1. <u>Motion Granted</u>. The Motion is granted on a final basis, subject to the terms set forth herein. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits. This Final Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

2. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Final Order, and subject to the Approved Budget, the Debtors are authorized to use Cash Collateral in accordance with the terms, conditions, and limitations set forth in this Final Order and the Approved Budget (including any Permitted Variances) during the period beginning with the Petition Date and ending on the Termination Date (as defined below) for, among other things, (i) the costs of administering these Chapter 11 Cases, including the satisfaction of administrative costs and expenses of the Debtors incurred in these Chapter 11 Cases, (ii) any payments authorized by any order of this Court, including first-day related relief subject to the terms thereof, (iii) the Debtors' ongoing working capital needs during the pendency of these Chapter 11 Cases, (iv) funding the Carve-Out, and (v) other general corporate purposes. Any dispute in connection with the use of Cash Collateral shall be heard by this Court.

    (a) <u>Compliance with Approved Budget</u>. The Debtors and Consenting Creditors have agreed to an initial Approved Budget: a 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements on a weekly basis. Attached as **Exhibit 1** hereto is a portion of the Approved Budget, representing the cash flow forecast for the first four

15

(4) weeks following the Petition Date. The Approved Budget includes and contains the Debtors' reasonable estimate of all operational receipts and all operational disbursements, fees, costs, and other expenses that will be payable, incurred, and/or accrued by any of the Debtors during the period covered by the Approved Budget. Beginning on November 7, 2018 and every four (4) weeks thereafter, the Debtors shall deliver to counsel to the Consenting Creditors a new 13-week budget that commences with the beginning of the week following the week such budget is delivered setting forth all forecasted receipts and disbursements of the Debtors on a weekly basis for such 13-week period, which shall include line items substantially similar to those set forth in the version of the Approved Budget attached hereto as **Exhibit 1**. Such supplements to the Approved Budget shall become and be deemed to constitute the new Approved Budget if not objected to by the Requisite Creditors (as defined in the RSA) within five (5) calendar days of receipt; provided that the previous Approved Budget shall remain operative pending the resolution of any objection received to the newly delivered Approved Budget, which objections may be delivered to the Debtors' counsel via email. For the avoidance of doubt, the Committee shall not have consent rights over the Approved Budget or any supplements thereto; provided, however, that nothing contained in this Final Order shall be deemed a waiver of the rights of the Committee to oppose any request by the Debtors for authority to make expenditures contained in the Approved Budget or any supplements thereto or to take such other action as authorized pursuant to the Bankruptcy Code with respect to such expenditures; provided, further that all rights of the Debtors and the Prepetition Secured Parties are reserved with respect to any such oppositions or actions by the Committee.

(b)     Permitted Variance. Notwithstanding the Approved Budget, so long as no Termination Event (as defined below) has occurred, the Debtors shall be authorized to use Cash

Collateral with respect to the Approved Budget, subject to (i) a permitted positive variance that would not cause the total operating disbursements of the Debtors to be greater than one-hundred ten percent (110%) of the Approved Budget and (ii) a permitted negative variance that would not cause the total operating receipts of the Debtors to be an amount less than ninety percent (90%) of the Approved Budget, first measured on December 5, 2018, and then on a four-week rolling basis thereafter (a "Permitted Variance"); provided, however, that in considering Permitted Variances, the Total Operating Cash Disbursements line item shall exclude any expenses of the Consenting Creditors, including fees and expenses of professionals retained by the Consenting Creditors. The Debtors may carry over any positive variance of total operating receipts or negative variance of total operating disbursements, measured on a four-week rolling basis, first measured on December 5, 2018, to future periods in the Approved Budget and allocate such unused amounts to total operating receipts or total operating disbursements, respectively, in the Approved Budget.

3.      Termination of Cash Collateral Usage.

(a)      Subject to paragraphs 3(b)-(c) below, the Debtors' right to use Cash Collateral pursuant to this Final Order shall terminate (each, a "Termination Event," and the date of any such Termination Event, the "Termination Date") without prior written notice or order of the Court or any further action by the Prepetition Secured Parties on the earliest to occur of:

i.      the effective date of a confirmed chapter 11 plan in the Chapter 11 Cases;

ii.      December 31, 2018, if the effective date of a confirmed chapter 11 plan in the Chapter 11 Cases has not occurred by such date;

iii.      the date the Debtors file or otherwise support any plan of reorganization, plan of liquidation, motion or other pleading to sell all or substantially all of the Debtors' assets, or other Alternative Restructuring (as defined in the RSA) without the prior written consent of the Requisite Creditors;

17

iv.    the date the Debtors withdraw, amend, or modify the Plan or file any motion, pleading, or other document (including any Definitive Document as defined in the RSA) that is inconsistent with the RSA or the Plan without the prior written consent of the Requisite Creditors;

v.    the date that an order is issued by any court of competent jurisdiction denying confirmation of the Plan or refusing to approve the related disclosure statement;

vi.    three (3) business days after the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any ruling, judgment, or order enjoining the consummation of or rendering illegal the Plan contemplated by the RSA and either (A) such ruling, judgment, or order has been issued at the request of or with the acquiescence of the Debtors or (B) in all other circumstances, such ruling, judgment, or order has not been stayed, reversed, or vacated within thirty (30) days after such issuance;

vii.    three (3) business days after the expiration of the Approved Budget unless a supplemental Approved Budget has been agreed upon by the Debtors and the Requisite Creditors;

viii.    the date the Debtors file, support, or acquiesce in any motion or other pleading seeking any financing under Bankruptcy Code section 364(d) secured by the Collateral[5] that does not require the immediate payment in full of all Prepetition Secured Obligations;

ix.    the date the Debtors file, support, or acquiesce in any motion or other pleading with the intent of effectuating a merger, consolidation, disposition, acquisition, investment, dividend, incurrence of indebtedness, or other similar transaction outside of the ordinary course of business other than (A) the commencement of the Chapter 11 Cases, (B) as permitted under the Interim Order

---

[5]    For purposes of this Final Order, the term "Collateral" shall include, without limitation, any and all prepetition and postpetition property, assets and interests in property and assets of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or successor cases) described in the Prepetition Agreements, and all "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or successor cases), of any kind or nature whatsoever, real or personal, tangible or intangible or mixed now existing or hereafter acquired or created, whether existing prior to the Petition Date or arising after the Petition Date, including, without limitation, all accounts, inventory, contracts, investment property, instruments, documents, chattel paper, patents, trademarks, copyrights, licenses, general intangibles, payment intangibles, machinery and equipment, real property (including all facilities), capital stock of each subsidiary of the Debtors, the Debtors' interests in any partnership or joint venture, deposit accounts, commercial tort claims and other causes of action, Cash Collateral, net proceeds of causes of action under chapter 5 of the Bankruptcy Code (the "Avoidance Actions"), and all proceeds of any of the collateral described above.

or this Final Order, or (C) with the prior written consent of the Requisite Creditors.

x.      three (3) business days after the date the Consenting Creditors provide the Debtors with written notice of the Debtors' failure to comply with any of the terms or conditions of the RSA, the Interim Order, or this Final Order;

xi.     the date of the Debtors' filing of an application, motion, or other pleading seeking to amend, modify, supplement, or extend the Interim Order or this Final Order without the prior written consent of the Requisite Creditors or the date any court enters an order reversing, amending, supplementing, staying, vacating, or otherwise modifying any material provision of the Interim Order or this Final Order without the prior written consent of the Requisite Creditors;

xii.    the date an application is filed by the Debtors for the approval of any superpriority claim or any lien in the Chapter 11 Cases which is *pari passu* with or senior to the Adequate Protection Liens, Superpriority Claims (each as defined below), or Prepetition Liens without the prior written consent of the Requisite Creditors;

xiii.   three (3) business days after a notice of the termination of the RSA;

xiv.    three (3) business days after the date the Debtors enter into any material non-ordinary course transaction or payment materially inconsistent with the RSA or the Plan without the prior written consent of the Requisite Creditors;

xv.     three (3) business days after the date any court enters an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any asset of the Debtors with a value in excess of $250,000;

xvi.    the date (A) any court enters an order dismissing the Chapter 11 Cases, converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, appointing a trustee or examiner with expanded powers in the Chapter 11 Cases, or terminating the Debtors' exclusivity under Bankruptcy Code section 1121 or (B) the Debtors apply for, consent to, or acquiesce in any such dismissal, conversion, or appointment; or

xvii.   the date the Debtors file any pleading or commence any action against the Prepetition Secured Parties challenging the validity or enforceability of the Prepetition Secured Obligations or the

19

Prepetition Liens or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any Consenting Creditor arising under or related to the Prepetition Secured Obligations.

(b)     The Requisite Creditors may waive the occurrence of any Termination Event. Notwithstanding anything contained herein, the Debtors' authority to use Cash Collateral hereunder shall automatically terminate (except for payment of the Carve-Out, as provided in paragraph 8 below) on the Termination Date.

(c)     Upon the occurrence of a Termination Event, the Debtors and each of the Consenting Creditors consent to a hearing on an expedited basis to consider (i) whether the automatic stay may be lifted so that the Prepetition Secured Parties may exercise any and all of their respective rights and remedies in respect of the Prepetition Collateral in accordance with this Final Order, the applicable Prepetition Agreement, or applicable law, (ii) whether, in fact, a Termination Event shall have occurred, or (iii) any other appropriate relief (including the Debtors' use of Cash Collateral on a nonconsensual basis); provided that the rights of the Debtors and other parties in interest, including the Committee, to oppose any relief requested by the Prepetition Secured Parties and the rights of any Prepetition Secured Party to oppose any request for relief by the Debtors (including for the use of Cash Collateral on a nonconsensual basis) are, in each case, fully reserved.

(d)     Upon the occurrence of the Termination Date, all Adequate Protection Obligations shall be immediately due and payable, subject to prior provision for the Carve-Out, and the Prepetition Secured Parties shall have all rights and remedies provided in the Interim Order, this Final Order, and under applicable law. Notwithstanding anything herein or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections

provided to the Prepetition Secured Parties under the Interim Order and this Final Order shall survive the Termination Date.

4.  <u>Restriction on Use of Cash Collateral</u>.

(a)  From and after the Petition Date, all proceeds of the Prepetition Collateral, including, without limitation, all of the Debtors' existing or future Cash Collateral, shall not, directly or indirectly, be used for any payments, expenses, or disbursements of the Debtors except for (i) those payments, expenses and/or disbursements that are expressly permitted under the Interim Order and this Final Order or any other order entered by this Court (which orders shall be reasonably acceptable to the Requisite Creditors) and in all cases which are consistent with the Approved Budget; (ii) compensation and reimbursement of fees and expenses payable pursuant to Bankruptcy Code sections 330 and 331 to professionals or professional firms retained by the Debtors (collectively, the "<u>Debtor Professionals</u>") and the Committee (the "<u>Committee Professionals</u>") pursuant to Bankruptcy Code sections 327, 328, 330, 331, or 503 and permitted or awarded pursuant to an order of this Court, and (iii) the payment of the fees and expenses of the Consenting Creditors, as provided for herein, including, but not limited to the fees and expenses of the Consenting Creditors Professionals (as defined herein); <u>provided</u>, <u>however</u>, that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clause (ii) and shall not affect the right of any party in interest to object to the allowance and payments of any such amounts.

(b)  Subject to the Carve-Out and upon entry of this Final Order, no administrative expense claims, including fees and expenses of professionals, shall be charged or assessed against or recovered from the Prepetition Collateral or Collateral or attributed to the Prepetition Secured Parties with respect to their respective interests in the Prepetition Collateral

or Collateral pursuant to the provisions of Bankruptcy Code section 506(c) or otherwise by, through, or on behalf of the Debtors without the prior written consent of the affected Prepetition Secured Parties, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Prepetition Secured Parties. Except as set forth herein, the Prepetition Secured Parties have not consented or agreed to the additional use of the Prepetition Collateral or the Collateral and nothing contained herein shall be deemed consent by the Prepetition Secured Parties to any charge, lien, assessment, or claim against the Prepetition Collateral or the Collateral. Other than as set forth in the last sentence of paragraph 5(b), the Prepetition Secured Parties shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or the Collateral.

(c)      Subject to paragraph 9 of this Final Order, but without restricting the use of Cash Collateral to limit the ability of the Committee to fulfill and comply with its statutory duties under the Bankruptcy Code (but subject to the limitations of subparagraph (vi) below with respect to preparing, initiating, or prosecuting, any Claims and Defenses against the Prepetition Secured Parties or with regard to the Prepetition Secured Obligations or Prepetition Liens), no Cash Collateral, Collateral, or proceeds thereof, or any portion of the Carve-Out may be used directly or indirectly by the Debtors, the Committee, any trustee appointed in the Chapter 11 Cases or any successor cases, or any other person, party or entity to (i) investigate, object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Prepetition Secured Obligations including the liens with respect thereto or any action purporting to do any of the foregoing; (ii) investigate, assert, or prosecute any Claims and Defenses (as defined below) against the Prepetition Secured Parties or their respective predecessors-in-

interest, agents, affiliates, representatives, attorneys, or advisors or any action purporting to do the foregoing; (iii) prevent, hinder, or otherwise delay the Prepetition Secured Parties' assertion, enforcement, or realization on the Prepetition Secured Obligations, Cash Collateral, the Prepetition Liens, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with the Interim Order and this Final Order; (iv) seek to modify any of the rights granted to the Prepetition Secured Parties hereunder without the consent of each of the affected Prepetition Secured Parties; (v) apply to the Court for authority to approve superpriority claims or grant liens in the Collateral or any portion thereof that are senior to, or on parity with, the Adequate Protection Liens, Superpriority Claims, or Prepetition Liens, unless all Prepetition Secured Obligations under the Prepetition Agreements, the Interim Order, and this Final Order have been, or will be upon consummation of such requested approval, refinanced, paid in full in cash, or otherwise agreed to in writing by the Requisite Creditors in their sole discretion; or (vi) seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Requisite Creditors or provided for by the Approved Budget; provided, however, that up to $50,000 of Cash Collateral in the aggregate may be used to pay the allowed fees and expenses of the Committee Professionals and incurred directly in connection with investigating, but not preparing, initiating, or prosecuting, any Claims and Defenses against the Prepetition Secured Parties or with regard to the Prepetition Secured Obligations or Prepetition Liens.

5.      Adequate Protection of the Prepetition Secured Parties. The Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361 and 363(c) and (e), to adequate protection of their interests in the respective Prepetition Collateral, including Cash Collateral, equal to the Diminution in Value (as defined below) of the Prepetition Secured Parties' interests

6916560v10

in the Prepetition Collateral (the "Adequate Protection Obligations"). As such, the Prepetition Secured Parties are entitled to receive adequate protection to the extent of any diminution in value of their interest in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral, the use, sale, or lease of Prepetition Collateral, the subordination of the Prepetition Liens to the Carve-Out, as described herein, or the imposition of the automatic stay (collectively, the "Diminution in Value") as required by Bankruptcy Code sections 361, 362, and 363. Accordingly, the Prepetition Secured Parties are hereby provided with the following forms of adequate protection:

(a)      Fees and Expenses. Subject to the provisions set forth herein, the Debtors are authorized and directed to pay, when due and payable and without regard to whether such fees and expenses were incurred prepetition or postpetition, any and all reasonable fees and expenses incurred by: (i) the Consenting Creditors (with respect to expenses only); (ii) Akin Gump Strauss Hauer & Feld LLP, as counsel to the Consenting Creditors in any and all capacities; (iii) Houlihan Lokey, as financial advisor to the Consenting Creditors; (iv) the Indenture Trustee; (v) Reed Smith LLP, as counsel to the Indenture Trustee; (vi) the Prepetition Term Loan Agent; (vii) Kelley Drye & Warren LLP, as counsel to the Prepetition Term Loan Agent; and (viii) such other professionals and/or consultants retained by the Consenting Creditors, the Indenture Trustee, and the Prepetition Term Loan Agent (each of the professionals in (ii) through (viii) being the "Consenting Creditors Professionals" and, together with the Debtor Professionals and the Committee Professionals, the "Professionals"), in each case including, without limitation, in connection with protecting the rights and interests of the Indenture Trustee, the Prepetition Term Loan Agent, and the Consenting Creditors in connection with the Chapter 11 Cases in any and all capacities, provided that if the payment of such

24

aggregate reasonable fees and expenses of the Consenting Creditors Professionals causes the Debtors' expenditures to exceed amounts permitted by the Approved Budget, such excess payments shall not constitute a Termination Event. The Debtors shall promptly reimburse the Consenting Creditors Professionals for such invoiced amounts within seven (7) business days (if no written objection is received within such seven (7) business day period) after delivery of an invoice describing such fees, costs, and expenses substantially in the form provided in the ordinary course of business; provided, however, that any such invoice may be redacted to protect privileged, confidential, or proprietary information. A copy of each such invoice submitted to the Debtors shall simultaneously be sent to the U.S. Trustee and counsel for the Committee. Any written objection to such fees, costs, or expenses must contain a specific basis for the objection and a quantification of the undisputed amount of the fees, costs, and expenses invoiced. Failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice. None of such fees, costs, and expenses shall be subject to Court approval or U.S. Trustee Guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

(b)     Adequate Protection Liens and Superpriority Claims for Prepetition Secured Parties. Subject to the Carve-Out, the Prepetition Secured Parties are granted: (i) valid, enforceable, nonavoidable and fully perfected first-priority postpetition security interests in and liens (effective and perfected upon the date of entry of this Final Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) (the "Adequate Protection Liens") on all of the Collateral; and (ii) first-priority superpriority administrative expense claims under Bankruptcy

25

Code section 507(b) (the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552, 726 (to the extent permitted by law), 1113, and 1114, whether or not such expenses or claims arise in the Chapter 11 Cases or in any subsequent cases or proceedings under the Bankruptcy Code that may result therefrom, to secure in each case an amount equal to the aggregate Diminution in Value (which shall be calculated in accordance with Bankruptcy Code section 506(a)) in the interests of the Prepetition Secured Parties in the Prepetition Collateral (including the Cash Collateral) including, without limitation, any such diminution in value as required by Bankruptcy Code sections 361, 362, and 363 resulting from (A) the use of Cash Collateral, (B) the use, sale, or lease of the Prepetition Collateral, (C) the Carve-Out to the extent used, or (D) imposition of the automatic stay under Bankruptcy Code section 362 or otherwise. The Adequate Protection Liens and Superpriority Claims shall be subject and subordinate only to: (A) the Permitted Liens; and (B) solely upon the occurrence of the Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth in the Interim Order and this Final Order. Subject to the payment of the Carve-Out, nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases or any successor cases. Nothing in the Interim Order or this Final Order will limit the right of the Indenture Trustee to argue for a charging lien, including without limitation the priority thereof, subject to all parties' rights to contest such allegation. The Prepetition

Secured Parties shall seek to enforce any valid Adequate Protection Liens or satisfy any valid Superpriority Claim against Collateral; provided that the Prepetition Secured Parties shall use reasonable efforts to realize on Collateral other than net proceeds or property recovered in respect of any (i) Claims and Defenses against the Prepetition Secured Parties and (ii) other Avoidance Actions to satisfy any claim for Diminution in Value prior to realizing any Adequate Protection Lien or Superpriority Claim that has attached to net proceeds or property recovered in respect of any (i) Claims and Defenses against the Prepetition Secured Parties and (ii) other Avoidance Actions. Notwithstanding anything to the contrary in this Final Order, with respect to the proceeds of (i) Claims and Defenses against the Prepetition Secured Parties and (ii) Avoidance Actions, the Adequate Protection Lien and/or Superpriority Claim shall only attach to and be paid from such proceeds, net of professional fees and expenses incurred in connection with pursuing (i) the Claims and Defenses against the Prepetition Secured Parties and (ii) the Avoidance Actions; provided that all parties reserve all rights (if any) with respect to the terms and conditions of the proposed retention of such professionals, including, without limitation the reasonableness of such professional fees and expenses. For the avoidance of doubt, all parties reserve all rights, claims, and defenses with respect to the request of any party for standing to pursue an adversary proceeding asserting Claims and Defenses against the Prepetition Secured Parties or the Avoidance Actions.

(c)     Additional Reporting Obligations. The Debtors shall prepare and furnish to the Consenting Creditors Professionals, the Committee Professionals, and the U.S. Trustee a weekly report of receipts, disbursements, and a reconciliation of actual receipts and disbursements with those set forth in the Approved Budget, on a line-by-line basis showing any percentage variance to the proposed corresponding line item of the Approved Budget (i) for such

27

weekly period and (ii) on a cumulative basis for the period of the Approved Budget or such other budget period, as applicable, and showing a calculation of the covenants and the Debtors' compliance or noncompliance, which shall be certified by the chief financial officer or chief executive officer (the "Budget Reconciliation"). The Debtors shall also provide the Consenting Creditors Professionals, the Committee Professionals, and the U.S. Trustee with (A) a list of any and all prepetition claims paid during the preceding week, each with a notation regarding which order authorized such payments, and (B) the cumulative total of all prepetition claims paid, each with a notation regarding which order authorized such payments (the "Other Reporting"). Such Budget Reconciliation and Other Reporting shall be provided to the Consenting Creditors Professionals, the Committee Professionals, and the U.S. Trustee so as actually to be received no later than the Wednesday (or, if Wednesday is not a business day, the next business day after such Wednesday) of the week following the week to which such Budget Reconciliation and Other Reporting applies. The Debtors and the Debtor Professionals shall make themselves available to discuss the Budget Reconciliation and any other weekly reports provided pursuant to this Final Order with the Consenting Creditors Professionals on a weekly basis and/or on such other basis as may be reasonably requested by the Consenting Creditors Professionals. The Debtors shall also provide such other financial and other reporting information as may be reasonably requested by the Indenture Trustee, the Prepetition Term Loan Agent, or the Consenting Creditors.

6.   Additional Perfection Measures.

(a)   Pursuant to the Interim Order and this Final Order, the Adequate Protection Liens are, and are deemed to be, valid, enforceable, and perfected liens, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document,

the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction) no further notice, filing, possession, control, or other act shall be required to effect such perfection.

(b)       None of the Debtors or the Prepetition Secured Parties shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent to enter into control agreements, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Adequate Protection Liens.

(c)       The Prepetition Secured Parties may, but shall not be obligated to, obtain consents from any landlord, licensor or other party in interest, file mortgages, financing statements, notices of lien or similar instruments, or otherwise record or perfect such security interests and liens, in which case:

      i.      all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Final Order; and

      ii.     no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(d)       In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the Prepetition Secured Parties may, but shall not be obligated to, file a true and complete copy of this Final Order in any place at which any such instruments would or could be filed, together with a description of the Collateral or the Prepetition Collateral, as applicable, and such filings by the Prepetition Secured Parties shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or

similar instruments had been filed or recorded at the time and on the date of entry of this Final Order.

7.      Collateral Rights.

(a)      If the Prepetition Secured Parties shall at any time exercise any of their respective rights and remedies hereunder or under applicable law in order to effect payment or satisfaction of the Adequate Protection Obligations and Prepetition Secured Obligations owed to the Prepetition Secured Parties or to receive any amounts or remittances due hereunder, including, without limitation, foreclosing upon and selling all or a portion of the Collateral (all solely to the extent not inconsistent with the requirements of the Interim Order and this Final Order), the Prepetition Secured Parties shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Collateral as the Prepetition Secured Parties may determine, subject to the limitations set forth in the last sentence of paragraph 5(b). No holder of a lien shall be entitled to object on the basis of the existence of any such lien to the exercise by the Prepetition Secured Parties of their respective rights and remedies under the Interim Order, this Final Order, or other applicable law to effect satisfaction of the Prepetition Secured Obligations or Adequate Protection Obligations owed to the Prepetition Secured Parties or to receive any amounts or remittances due hereunder, provided that the Prepetition Secured Parties have complied with paragraph 9 of this Final Order.

(b)      The Debtors shall not sell, lease, transfer, or otherwise dispose of their interest in the Collateral outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of the Requisite Creditors. In the event of any such sale, lease, transfer, license, or other disposition of property of the Debtors that constitutes Collateral outside the ordinary course of business (to the extent permitted by the

Interim Order and this Final Order), the Debtors are authorized and directed, without further notice or order of this Court, (x) if after the Investigation Termination Date and there is no pending Challenge, to promptly pay to the Prepetition Secured Parties 100% of the net cash proceeds[6] resulting therefrom no later than the second business day following receipt of such proceeds, solely to the extent that, after giving effect to such payment, there remains in the Debtors' estates cash in an amount equal to the sum of (i) any amounts that remain unspent pursuant to the Approved Budget, (ii) the Carve-Out, and (iii) any other amounts contemplated by the RSA as requiring payment, or (y) if prior to the Investigation Termination Date, to promptly escrow such net cash proceeds subject to disbursement upon further order of the Court.

(c)     In the event of any casualty, condemnation, or similar event with respect to property that constitutes Collateral, (x) if after the Investigation Termination Date and there is no pending Challenge, the Debtors are authorized and directed to pay to the Prepetition Secured Parties 100% of any insurance proceeds, condemnation award, or similar payment no later than the third business day following receipt of payment by the Debtors, solely to the extent that, after giving effect to such payment, there remains in the Debtors' estates cash in an amount equal to the sum of (i) any amounts that remain unspent pursuant to the Approved Budget, (ii) the Carve-Out, and (iii) any other amounts contemplated by the RSA as requiring payment, and (y) if prior to the Investigation Termination Date, to promptly escrow 100% of any insurance proceeds, condemnation award, or similar payment no later than the third (3rd) business day following receipt of payment by the Debtors subject to disbursement upon further order of the Court.

---

[6]    Net cash proceeds shall not include proceeds from the sale of working interests to joint venture partners.

6916560v10

8.      <u>Carve-Out</u>.

(a)      As used in this Final Order, "<u>Carve-Out</u>" means: (i) the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); (ii) reasonable and documented fees and expenses incurred by a trustee appointed under Bankruptcy Code section 726(b) in an amount not to exceed $50,000; (iii) all fees and expenses incurred by the Professionals prior to the Termination Date; and (iv) fees and expenses of the Professionals in an aggregate amount not to exceed $1,000,000 that are incurred on and after the Termination Date, provided such fees and expenses (in the aggregate) are ultimately allowed by this Court, each subject to the rights of any party in interest to object to the allowance of any such fees and expenses. For the avoidance of doubt, and without limiting the foregoing, so long as the Termination Date shall not have occurred, (i) the Debtors are authorized, subject to applicable court orders, to pay any expense that falls within the Carve-Out, and (ii) Cash Collateral may be used for (A) payment of fees and expenses of the Professionals as allowed and payable under Bankruptcy Code sections 330 and 331 and (B) payments otherwise agreed to by the Consenting Creditors, <u>provided</u>, <u>however</u>, that in each case such payments shall be in accordance with the Approved Budget or otherwise in accordance with the Interim Order and this Final Order, <u>provided further</u> that such payments shall not be subject to disgorgement.

(b)      No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Liens, having a lien or administrative priority superior to or *pari passu* with that of the Prepetition Liens, the Superpriority Claim, or Adequate Protection Liens granted by the Interim Order and this Final Order, shall be granted while any portion of the Prepetition Secured Obligations remain outstanding or in effect without the prior written consent of the Requisite Creditors.

9.    <u>Investigation Period</u>.

(a)    The Adequate Protection Liens, the Superpriority Claims, and the Prepetition Liens shall be senior to, and no Collateral or Prepetition Collateral may be used to pay, any claims for services rendered by any of the professionals retained by the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or any successor cases), the Committee, any creditor, or any other party in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, investigation, objection, defense or other contested matter against the Prepetition Secured Parties in connection with (i) invalidating, setting aside, avoiding, subordinating, recharacterizing, or challenging, in whole or in part, any claims or liens arising under or with respect to the Prepetition Agreements, the Prepetition Secured Obligations, the Prepetition Liens, the Collateral, or the Prepetition Collateral, or (ii) preventing, hindering, or delaying, whether directly or indirectly, the Prepetition Secured Parties' assertions or enforcement of their liens, security interests, or realization upon any of the Collateral or the Prepetition Collateral; <u>provided</u>, <u>however</u>, that in the event the liens, security interests or claims of the Prepetition Secured Parties are voided, avoided, disallowed, or subordinated, then any lien or priority granted to the Prepetition Secured Parties hereunder may be voided, avoided, disallowed, or subordinated to the same extent, and no provision hereof shall preclude or impair the Court from imposing any appropriate remedy in such event. Notwithstanding anything herein to the contrary, parties in interest shall have until the earlier of (i) the date a plan of reorganization or liquidation is confirmed in these Chapter 11 Cases (the "<u>Confirmation Date</u>") or (ii) January 21, 2019 (each, the "<u>Investigation Termination Date</u>") to investigate the validity, perfection, enforceability, and extent of the Prepetition Secured Obligations and Prepetition Liens and any potential claims of the Debtors or their estates against

the Prepetition Secured Parties in respect of the Prepetition Secured Obligations and Prepetition Liens, "lender liability" claims and causes of action, any actions, claims, or defenses under chapter 5 of the Bankruptcy Code, or any other claims and causes of action (all such claims, defenses, and other actions described in this paragraph are collectively defined as the "Claims and Defenses").

(b)     Any challenge to the Prepetition Secured Obligations or Prepetition Liens or the assertion of any other claims or causes of action of the Debtors or their estates against the Prepetition Secured Parties must be made by a party in interest with standing who timely and properly commences an adversary proceeding, or by the Committee filing a pleading requesting authority to commence an adversary proceeding asserting Claims and Defenses (a "UCC Challenge Pleading"), on or before the Investigation Termination Date (such pleading, including a UCC Challenge Pleading, a "Challenge"); provided, however, that the Committee shall use commercially reasonable efforts to have a UCC Challenge Pleading heard not more than thirty (30) days after the UCC Challenge Pleading is filed. If no Challenge is properly filed on or before the Investigation Termination Date, all holders of claims and interests as well as other parties in interest shall be forever barred from bringing or taking any such action, and the Debtors' stipulations and the releases set forth herein and in any Final Order shall be binding on all parties in interest. If such a Challenge is timely brought, following proper procedures, any claim or action that is not brought shall be forever barred. In the event of a timely and successful challenge by plaintiff in such a Challenge, this Court shall fashion the appropriate remedy with respect to the Prepetition Secured Parties after hearing from all parties.

(c)     Nothing in the Interim Order or this Final Order vests or confers on the Committee or any other party standing or authority to bring, assert, commence, continue,

prosecute, or litigate any cause of action belonging to the Debtors or their estates, including, without limitation, the Claims and Defenses with respect to the Prepetition Agreements, the Prepetition Liens, or the Prepetition Secured Obligations.

10. <u>Waiver of Marshaling Doctrine and Equities of the Case Exception</u>. Effective upon entry of this Final Order, in no event shall the Prepetition Secured Parties be subject to (a) the equitable doctrine of marshaling or any similar doctrine with respect to the Collateral or (b) the "equities of the case" exception under Bankruptcy Code section 552(b) with respect to the proceeds, product, offspring, or profits of any of the Collateral.

11. <u>Automatic Stay Modified</u>. The automatic stay provisions of Bankruptcy Code sections 362 are hereby vacated and modified to the extent necessary to permit the Prepetition Secured Parties, to exercise, upon the occurrence of the Termination Date, all rights and remedies provided for hereunder, and to take any or all of the following actions without further order of or application to this Court: (a) terminate the Debtors' use of Cash Collateral; (b) declare all Adequate Protection Obligations owed to the Prepetition Secured Parties to be immediately due and payable; (c) subject to the last sentence of paragraph 5(b), to set off and apply any and all amounts in accounts maintained by the Debtors with the Prepetition Term Loan Agent against the Adequate Protection Obligations and Prepetition Secured Obligations owed to the Prepetition Secured Parties and otherwise enforce rights against the Collateral for application towards the Adequate Protection Obligations and Prepetition Secured Obligations (in either event, subject to five (5) business days' notice to the Debtors, the U.S. Trustee and the Committee of any proposed setoff or application of cash), and without prejudice to the right of the Debtors, the Committee, or any party in interest to object to any such proposed action of the Prepetition Secured Parties against the Collateral; and (d) upon three (3) business days' notice to

6916560v10

the Debtors, the U.S. Trustee, and the Committee to take any other actions or exercise any other rights or remedies permitted under the Interim Order, this Final Order, or applicable law to effect the repayment and satisfaction of the Adequate Protection Obligations and Prepetition Secured Obligations owed to the Prepetition Secured Parties, and without prejudice to the rights of the Debtors, the Committee, or any party in interest to object to any such proposed action of the Prepetition Secured Parties. The rights and remedies of the Prepetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have.

12.     <u>Binding Effect</u>. The provisions of this Final Order shall be binding upon the Debtors, the Prepetition Secured Parties, and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the Prepetition Secured Parties, and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code. The provisions of this Final Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest including the Committee.

13.     <u>Priorities Among Prepetition Secured Parties</u>. Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the Prepetition Secured Parties (including, without limitation, the relative priorities and rights of the Prepetition Secured Parties with respect to the adequate protection granted hereunder), such relative priorities and rights shall continue to be governed by the Prepetition Agreements, to the extent otherwise applicable, including, without limitation, that certain Intercreditor Agreement dated as of February 17, 2016, between the Prepetition Term Loan Agent and the Indenture Trustee.

6916560v10

14.     <u>No Waiver</u>. This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court. The delay or failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the Prepetition Agreements, or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the Prepetition Secured Parties.

15.     <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, (a) any Prepetition Secured Party's right to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection, or any party's objection thereto, or (b) any of the rights of the Prepetition Secured Parties under the Bankruptcy Code or under applicable nonbankruptcy law or any party's objections thereto. Nothing contained herein shall be deemed a finding by the Court or an acknowledgement by the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Parties against any Diminution in Value of their interests in the Prepetition Collateral.

16.     <u>Priority of Terms</u>. To the extent of any conflict between or among (a) the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the Prepetition Agreements or the RSA, the terms and provisions of this Final Order shall govern.

6916560v10

17.     <u>No Third-Party Beneficiary</u>. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect, or incidental beneficiary.

18.     <u>Survival</u>. Except as otherwise provided herein, (a) the protections afforded to the Prepetition Secured Parties under this Final Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing the Chapter 11 Cases or (ii) converting the Chapter 11 Cases into cases under chapter 7 of the Bankruptcy Code, and (b) the Adequate Protection Liens and the Superpriority Claims (and the Carve-Out) shall continue in the Chapter 11 Cases or any such successor cases or after any such dismissal. Except as otherwise provided herein, the Adequate Protection Liens and the Superpriority Claims (and the Carve-Out) shall maintain their priorities as provided in this Final Order and not be modified, altered, or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of the Chapter 11 Cases into cases pursuant to chapter 7 of the Bankruptcy Code or dismissal of the Chapter 11 Cases, or by any other act or omission until the Prepetition Secured Obligations are indefeasibly paid in full in cash or receive treatment as otherwise agreed to by the Requisite Creditors.

19.     <u>Entry of Final Order; Effect</u>. This Final Order shall take effect and be fully enforceable immediately upon entry hereof, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Final Order on this Court's docket in the Chapter 11 Cases.

20.     <u>Waiver of Requirement to File Proofs of Claim</u>. The Prepetition Secured Parties shall not be required to file proofs of claim with respect to any of the Prepetition Secured Obligations.

6916560v10

21.   <u>Notices to Committee</u>. All notices, budgets, supplemental budgets, reports, and "Other Reporting" required to be provided by the Debtors to the Consenting Creditors and/or the Prepetition Secured Parties, or by the Consenting Creditors or the Prepetition Secured Parties to the Debtors, pursuant to this Final Order shall simultaneously be delivered to the Committee.

22.   <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Final Order.

23.   <u>Reservation of Rights</u>.

(a)   **Northstar**. Notwithstanding any other provision of this Final Order to the contrary, all rights, claims, and interests of Northstar Offshore Ventures LLC ("<u>NOV</u>") as to any funds placed by the Debtors into the collateral account of the Debtors' surety bonding company (the "<u>Surety Collateral Account</u>") referenced in Section 3.2 of the Purchase and Sale Agreement between NOV and PQE dated January 31, 2018, up to the amount of $589,375.89 (the "<u>Alleged NOV Deficiency</u>"), are hereby preserved. To the extent that NOV holds either an ownership interest in or a valid prepetition lien on the Surety Collateral Account for the Alleged NOV Deficiency, no lien or interest granted by this Final Order shall be superior to the interest or rights of NOV as to the Surety Collateral Account. To the extent NOV does not hold an ownership interest in or valid prepetition lien on the Surety Collateral Account, the Adequate Protection Liens shall attach to all funds in the Surety Collateral Account. The Debtors shall use commercially reasonable efforts to notify NOV (and its counsel) not less than three (3) business days prior to the release of funds from the Surety Collateral Account if the release of such funds will result in the balance of the Surety Collateral Account being less than the Alleged NOV Deficiency and consent to NOV bringing an emergency motion to enforce NOV's rights, claims, and interests to such funds.

(b)     **Department of the Interior**. Notwithstanding any other provision of this Final Order, nothing in this Final Order or in any of its implementing documents including, without limitation, the Approved Budget, shall limit or affect in any way the rights of the Department of the Interior, or the obligations of the Debtors, with respect to the Debtors' federal lease and grant terms, which include, but are not limited to, decommissioning obligations, monitoring and maintenance obligations and/or financial assurance obligations, if any, associated with the Debtors' interests in each of their federal oil and gas leases and/or grants of right-of-way; provided, however, to the extent the Debtors seek to use cash collateral outside of the Approved Budget to satisfy the foregoing obligations, the Debtors shall be required to seek an additional order of this Court and the rights of all parties with respect to such request shall be reserved.

(c)     **Mack Oil Company**. Nothing in this Final Order shall be deemed to grant the Prepetition Secured Parties Adequate Protection Liens in any ownership interests of Mack Oil Company ("Mack Oil"), including any interests of Mack Oil in the Tigre Lagoon leases identified in Exhibit A to Mack Oil's limited objection filed on November 21, 2018 [Docket No. 147], which ownership interests the Debtors dispute and to which claims and interests the Debtors reserve all rights, claims, and defenses.

(d)     **Whittemore**. Nothing in this Final Order shall be deemed to grant the Prepetition Secured Parties Adequate Protection Liens in any of Kenneth Whittemore's royalty interests, provided that all parties reserve all rights, claims, and defenses to such asserted royalty interests.

**Signed:  December 03, 2018.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

**PetroQuest Energy**
**Near-Term Cash Budget Analysis**

| Week Ending | Week 1 Forecast 11/9/18 | Week 2 Forecast 11/16/18 | Week 3 Forecast 11/23/18 | Week 4 Forecast 11/30/18 | Week 5 Forecast 12/7/18 | Week 6 Forecast 12/14/18 | Week 7 Forecast 12/21/18 | Week 8 Forecast 12/28/18 | Week 9 Forecast 1/4/19 | Week 10 Forecast 1/11/19 | Week 11 Forecast 1/18/19 | Week 12 Forecast 1/25/19 | Week 13 Forecast 2/1/19 | Week 14 Forecast 2/8/19 | Week 15 Forecast 2/15/19 | Week 16 Forecast 2/22/19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Receipts** | | | | | | | | | | | | | | | | |
| Oil Receipts | -- | -- | 4,033 | -- | -- | -- | 3,339 | -- | -- | -- | -- | 4,058 | -- | -- | -- | 4,334 |
| Gas Receipts | -- | -- | -- | 7,946 | -- | -- | -- | 7,466 | -- | -- | -- | 8,644 | -- | -- | -- | -- |
| NGL Receipts | -- | -- | -- | 2,613 | -- | -- | -- | -- | 3,104 | -- | -- | -- | 2,981 | -- | -- | -- |
| JIB/OBO Receipts | 194 | 435 | 435 | 675 | 675 | 410 | 410 | 410 | 624 | 624 | 624 | 624 | 815 | 815 | 760 | 760 |
| Miscellaneous | -- | 113 | -- | 225 | -- | -- | -- | -- | -- | -- | 3,500 | -- | -- | -- | -- | -- |
| **Operating Receipts** | **194** | **548** | **4,468** | **11,459** | **675** | **410** | **3,749** | **7,876** | **3,728** | **624** | **4,124** | **13,325** | **3,795** | **815** | **760** | **5,093** |
| **Operating Disbursements** | | | | | | | | | | | | | | | | |
| Payroll & Benefits | (35) | (325) | (137) | (325) | (35) | (305) | (137) | (325) | (35) | (325) | (137) | (325) | (35) | (325) | (137) | (325) |
| Other G&A | (118) | (277) | (205) | (205) | (170) | (375) | (279) | (260) | (183) | (402) | (167) | (236) | (137) | (176) | (176) | (176) |
| WI & Royalties | -- | -- | (2,145) | (7,448) | -- | -- | (1,782) | (5,562) | (1,375) | -- | -- | (6,161) | (1,920) | -- | -- | (2,488) |
| Transportation and Marketing | -- | -- | (578) | (1,012) | -- | -- | (71) | (699) | (269) | -- | -- | (981) | (271) | -- | -- | (101) |
| Production Taxes | -- | (300) | (218) | (772) | -- | -- | (663) | (658) | -- | -- | -- | (759) | -- | -- | -- | (178) |
| Operating Expenses | (335) | (335) | (335) | (335) | (294) | (294) | (294) | (294) | -- | -- | -- | -- | (289) | (289) | (289) | (289) |
| Total Capex and Abandonment | (100) | (100) | (100) | (100) | (5,600) | (350) | (350) | (350) | (350) | (350) | (3,850) | (350) | (1,454) | (1,454) | (1,454) | (1,454) |
| **Operating Disbursements** | **(588)** | **(1,337)** | **(3,717)** | **(10,197)** | **(6,099)** | **(1,324)** | **(3,576)** | **(8,147)** | **(2,212)** | **(1,077)** | **(4,154)** | **(8,812)** | **(4,106)** | **(2,243)** | **(2,055)** | **(5,010)** |
| **Operating Cash Flows** | **(394)** | **(789)** | **751** | **1,262** | **(5,423)** | **(913)** | **172** | **(271)** | **1,516** | **(453)** | **(30)** | **4,513** | **(311)** | **(1,429)** | **(1,296)** | **83** |
| **Restructuring** | | | | | | | | | | | | | | | | |
| Professional Fees | -- | -- | -- | -- | -- | -- | (470) | (6,380) | -- | -- | -- | -- | -- | -- | -- | -- |
| US Trustee Fees | -- | -- | -- | -- | -- | -- | -- | (275) | -- | -- | -- | -- | -- | -- | -- | -- |
| Utility Deposit | (28) | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| **Restructuring** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** |
| **Scheduled Financings Disbursements** | | | | | | | | | | | | | | | | |
| Principal & Interest - New DDTL | -- | (1,458) | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| **Financing** | **--** | **(1,458)** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** | **--** |
| Beginning Cash | 27,098 | 26,675 | 24,428 | 25,178 | 26,440 | 21,017 | 20,103 | 19,805 | 12,880 | 14,396 | 13,944 | 13,914 | 18,427 | 18,116 | 16,687 | 15,392 |
| Net Cash Flow | (423) | (2,248) | 751 | 1,262 | (5,423) | (913) | (298) | (6,925) | 1,516 | (453) | (30) | 4,513 | (311) | (1,429) | (1,296) | 83 |
| **Ending Cash** | **26,675** | **24,428** | **25,178** | **26,440** | **21,017** | **20,103** | **19,805** | **12,880** | **14,396** | **13,944** | **13,914** | **18,427** | **18,116** | **16,687** | **15,392** | **15,475** |

**EXHIBIT 1**