## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| | § |
| **In re:** | § **Chapter 11** |
| | § |
| **PETROQUEST ENERGY, INC.,** *et al.,* | § **Case No. 18-36322 (DRJ)** |
| | § |
| **Debtors.[1]** | § **(Jointly Administered)** |
| | § |

### NOTICE OF (I) HEARINGS ON FINAL APPROVAL OF
### DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN,
### (II) OBJECTION DEADLINES, AND (III) SUMMARY OF DEBTORS' PLAN

1.      On November 6, 2018 (the "Petition Date"), PetroQuest Energy, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors"), each commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

2.      On November 20, 2018, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee"). As of the date of this Notice, the Committee does not support the Plan. The Debtors, the Consenting Creditors, and the Committee intend to utilize the time between the date of this Notice and the Confirmation Hearing to seek a consensual resolution of the Committee's concerns regarding the Plan. The Debtors will include an update regarding the status of these discussions as part of the Plan Supplement, which will be filed on or before January 11, 2019 and a copy of which will be available free of charge by visiting the Debtors' voting agent, Epiq Corporate Restructuring, LLC's (the "Voting Agent") website at http://dm.epiq11.com/PetroQuest.

3.      On December 20, 2018, the Debtors filed a second amended disclosure statement (as further amended or modified, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code and an amended plan of reorganization (as further amended or modified, the "Plan").[2] Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' Voting Agent, at the following: http://dm.epiq11.com/PetroQuest. Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting Agent at 1-877-861-1567 (domestic and Canada) or 1-503-597-

---

1       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: PetroQuest Energy, Inc. (0714), PetroQuest Energy, L.L.C. (2439), TDC Energy LLC (8877), PetroQuest Oil & Gas, L.L.C. (1170), PQ Holdings LLC (7576), Pittrans Inc. (1747), and Sea Harvester Energy Development, L.L.C. (5903). The address of the Debtors' headquarters is: 400 E. Kaliste Saloom Road, Suite 6000, Lafayette, Louisiana 70508.

2       Capitalized terms not otherwise used herein have the meaning ascribed to them in the Plan.

7682 (international) and requesting to speak with a member of the Solicitation Team, or by email to tabulation@epiqglobal.com with a reference to "PetroQuest" in the subject line.

**Information Regarding Plan**

4.      On December 7, 2018, the Court approved the following schedule with respect to final approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Schedule"):

| Event | Deadline |
|---|---|
| Deadline to Object to Final Approval of Disclosure Statement | December 28, 2018 at 5:00 p.m. (Prevailing Central Time) |
| Hearing on Final Approval of Disclosure Statement | January 3, 2019 at 3:00 p.m. (Prevailing Central Time) |
| Deadline to File Rule 3018 Motion | January 3, 2019 at 5:00 p.m. (Prevailing Central Time) |
| Plan Supplement Filing Deadline and Deadline to File Notice Regarding Settlement Discussions with Committee | January 11, 2019 at 5:00 p.m. (Prevailing Central Time) |
| Deadline to Object to Confirmation of the Plan | January 23, 2019 at 12:00 p.m. (Prevailing Central Time) |
| Plan Voting Deadline | January 23, 2019 |
| Deadline to File Voting Affidavit | January 28, 2019 at 5:00 p.m. (Prevailing Central Time) |
| Deadline to File Consolidated Brief and Reply in Support of Confirmation | January 28, 2019 at 5:00 p.m. (Prevailing Central Time) |
| Hearing on Confirmation of Plan | January 30, 2019 at 1:00 p.m. (Prevailing Central Time) |

5.      Any objections to the Disclosure Statement and/or the Plan must be: (i) in writing, (ii) filed with the Clerk of the Bankruptcy Court together with proof of service thereof, (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection, and (iv) conform to the applicable Bankruptcy Rules and the Bankruptcy Local Rules. In addition to being filed with the Clerk of the Bankruptcy Court, any such objections should be served upon the following parties so as to be received by the Objection Deadline:

(i)      PetroQuest Energy, Inc., 400 E. Kaliste Saloom Road, Suite 6000, Lafayette, Louisiana 70508 (Attn: Charles T. Goodson, President and Chief Executive Officer);

(ii)      Proposed counsel to the Debtors, Porter Hedges LLP, 1000 Main Street, Suite 3600, Houston, Texas 77002 (Attn: John F. Higgins, Joshua W. Wolfshohl, and M. Shane Johnson);

(iii)    Counsel to the Consenting Creditors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Michael S. Stamer) and Akin Gump Strauss Hauer & Feld LLP, 1700 Pacific Avenue, Suite 4100 Dallas, Texas 75201 (Attn: Sarah Link Schultz);

(iv)    Counsel to the Prepetition Term Loan Agent, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178 (Attn: Pamela Bruzzese-Szczygiel);

(v)    Counsel to the Indenture Trustee, Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Kurt F. Gwynne);

(i)    Proposed counsel to the Committee, Heller, Draper, Patrick, Horn & Manthey, L.L.C., 650 Poydras Street, Suite 2500, New Orleans, Louisiana 70130 (Attn: William H. Patrick, III, Tristan Manthey, Cherie Dessauer Nobles, and Michael Landis); and

(ii)    The Office of the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (Attn: Hector Duran, Jr.).

### Summary of Plan[3]

6.    The following chart summarizes the treatment provided by the Plan to each class of Claims and Interests:

---

[3] The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. For a more detailed description of the Plan, please refer to the Disclosure Statement.

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | In full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each Holder thereof shall receive (i) payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim or (ii) such other treatment as may otherwise be agreed to by such Holder, the Debtors, and the Requisite Creditors. | Unimpaired | No (Deemed to Accept) | 100% |
| 2 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed Other Secured Claim, each such Holder shall receive, at the Debtors' election, either (i) Cash equal to the full Allowed amount of its Claim, (ii) Reinstatement of such Holder's Allowed Other Secured Claim, (iii) the return or abandonment of the collateral securing such Allowed Other Secured Claim to such Holder, or (iv) such other treatment as may otherwise be agreed to by such Holder, the Debtors, and the Requisite Creditors. | Unimpaired | No (Deemed to Accept) | 100% |
| 3 | Secured Tax Claims | Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed Secured Tax Claim, each such Holder shall receive, at the Debtors' election, either (i) Cash equal to the full Allowed amount of its Claim, (ii) Reinstatement of such Holder's Allowed Secured Tax Claim, (iii) the return or abandonment of the collateral securing such Allowed Secured Tax Claim to such Holder, or (iv) such other treatment as may otherwise be agreed to by such Holder, the Debtors, and the Requisite Creditors. | Unimpaired | No (Deemed to Accept) | 100% |
| 4 | First Lien Claims | On or before the Effective Date, each Holder of a First Lien Claim will receive Cash equal to the amount of its Allowed Claim from funds available pursuant to the Exit Facility. | Unimpaired | No (Deemed to Accept) | 100% |
| 5 | Prepetition Second Lien Notes Secured Claims | Except to the extent that a Holder of an Allowed Prepetition Second Lien Notes Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed Prepetition Second Lien Notes Secured Claim, each such Holder shall receive | Impaired | Yes | 21-49%[4] |

---

[4]   The estimated range of recoveries for Class 5 is based on the Reorganized Debtors' Value in the Valuation Analysis attached hereto as **Exhibit E**. The Valuation Analysis reflects work performed by Seaport based on information available as of November 6, 2018. The value of assets of an operating business is subject to numerous uncertainties and contingencies that are difficult to predict and will fluctuate over time.

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| | | (i) its Pro Rata share of 100% of the New Equity under the Plan, subject to (x) dilution by the awards related to New Equity issued under the Management Incentive Plan and (y) the Put Option Premium, and (ii) its Pro Rata share of $80 million in New Second Lien PIK Notes; such Pro Rata share of the New Equity and New Second Lien PIK Notes calculated by including the $275,045,768 (plus any accrued and unpaid interest thereon payable through the Petition Date) of Prepetition Second Lien PIK Notes Claims as Claims that will share Pro Rata in 100% of New Equity, subject to (x) dilution by the awards related to New Equity issued under the Management Incentive Plan and (y) the Put Option Premium, and $80 million in New Second Lien PIK Notes. | | | |
| 6 | Prepetition Second Lien PIK Notes Secured Claims | Except to the extent that a Holder of an Allowed Prepetition Second Lien PIK Notes Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed Prepetition Second Lien PIK Notes Secured Claim, each such Holder shall receive (i) its Pro Rata share of 100% of the New Equity under the Plan, subject to (x) dilution by the awards related to New Equity issued under the Management Incentive Plan and (y) the Put Option Premium, and (ii) its Pro Rata share of $80 million in New Second Lien PIK Notes; such Pro Rata share of the New Equity and New Second Lien PIK Notes calculated by including the $9,427,000 (plus any accrued and unpaid interest thereon payable through the Petition Date) of Prepetition Second Lien Notes PIK Notes Claims as Claims that will share Pro Rata in 100% of New Equity, subject to (x) dilution by the awards related to New Equity issued under the Management Incentive Plan and (y) the Put Option Premium, and $80 million in New Second Lien PIK Notes. | Impaired | Yes | 21-49%[5] |

---

[5]   The estimated range of recoveries for Class 6 is based on the Reorganized Debtors' Value in the Valuation Analysis attached hereto as **Exhibit E**. The Valuation Analysis reflects work performed by Seaport based on information available as of November 6, 2018. The value of assets of an operating business is subject to numerous uncertainties and contingencies that are difficult to predict and will fluctuate over time.

6979925v1

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| 7 | General Unsecured Claims | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of each Allowed General Unsecured Claim and of and in exchange for each Allowed General Unsecured Claim, each such Holder shall receive its Pro Rata share of the General Unsecured Claims Distribution on the Effective Date. | Impaired | Yes | 0.1 - 0.2%[6] |
| 8 | Section 510(b) Claims | Section 510(b) Claims, if any, shall be discharged, canceled, released, and extinguished as of the Effective Date, and shall be of no further force or effect, and Holders of Section 510(b) Claims shall not receive any distribution on account of such Section 510(b) Claims. | Impaired | No (Deemed to Reject) | 0% |
| 9 | Intercompany Claims | Intercompany Claims shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, shall be cancelled. No distribution shall be made on account of any Intercompany Claims other than in the ordinary course of business of the Reorganized Debtors, as applicable. For the avoidance of doubt, Intercompany Claims that are Reinstated as of the Effective Date, if any, shall be subordinate in all respects to the Exit Facility and the New Second Lien PIK Notes. | Unimpaired / Impaired | No (Deemed to Either Accept or Reject) | N/A |
| 10 | Intercompany Interests | Intercompany Interests shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, shall be cancelled. No distribution shall be made on account of any Intercompany Interests. <br><br> No distributions on account of Intercompany Interests are being made to the Holders of such Intercompany Interests. Instead, to the extent Intercompany Interests are Reinstated under the Plan, such Reinstatement is solely for the purposes of administrative convenience, for the ultimate benefit of the Holders of the New Equity, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims. For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall continue to be owned by the Reorganized Debtor that corresponds to the Debtor that owned such Intercompany Interests prior to the Effective Date. | Unimpaired / Impaired | No (Deemed to Either Accept or Reject) | N/A |
| 11 | PetroQuest Interests | On the Effective Date, or as soon thereafter as reasonably practicable, all PetroQuest Interests will be extinguished and the Holders of PetroQuest Interests | Impaired | No (Deemed to Reject) | 0% |

---

[6]   Includes a range of the Allowed amount of the Second Lien Deficiency Claims from $156,577,000-$239,877,000.

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| | | shall not receive or retain any distribution, property, or other value on account of their PetroQuest Interests. | | | |

### Non-Voting Status of Holders of Certain Claims and Interests

7.      The Plan provides that each holder of a Claim in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), and Class 4 (First Lien Claims) are unimpaired. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of Claims in each of the foregoing Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote. The Plan also provides that each holder of a Claim or Interest in Class 8 (Section 510(b) Claims) and Class 11 (PetroQuest Interests) are impaired and deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Finally, Class 9 (Intercompany Claims) and Class 10 (Intercompany Interests) are not entitled to vote because they are either unimpaired if they are reinstated, or impaired and not receiving any property if they are cancelled. As explained above, the Voting Agent will provide you, free of charge, with the Notice of Non-Voting Status.

### Notice Regarding Certain Release, Exculpation, and Injunction Provisions in Plan

PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING:

Article VIII.E *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Term Loan Agreement, the Prepetition Second Lien Indenture, the Prepetition Second Lien PIK Indenture, the Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or**

6979925v1

events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

Article VIII.F *Releases by Holders of Claims and Interests*

As of the Effective Date, to the fullest extent of the law, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the

8

management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Term Loan Agreement, the Prepetition Second Lien Indenture, the Prepetition Second Lien PIK Indenture, the Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

Article VIII.G *Exculpation*

Except as otherwise specifically provided in the Plan and only to the fullest extent permitted under Bankruptcy Code section 1125(e), no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim,

6979925v1

Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Article VIII.H *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any

kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.

### Relevant Definitions Related to Release and Exculpation Provisions:

"*Exculpated Party*" means the Debtors, the Reorganized Debtors, each of the Debtors' and the Reorganized Debtors' current and former Affiliates, and each of the Debtors' and the Reorganized Debtors' and their current and former Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such.

"*Released Party*" means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting Creditors; (d) the Indenture Trustee; (e) the Creditors' Committee and its past and current members in their capacities as such; and (f) with respect to each of the foregoing parties under (a) through (e), such Entity and its current and former direct and indirect Affiliates, and such Entity's current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equityholders, officers, directors, managers, principals, members, employees, subcontractors, advisors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such.

"*Releasing Party*" means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting Creditors; (d) the Indenture Trustee; (e) the Creditors' Committee and its past and current members in their capacities as such; (f) all Holders of Claims and Interests that are deemed to accept the Plan; (g) all Holders of Claims who vote to accept the Plan; (h) all Holders of Claims who abstain from voting on the Plan and who do not opt out of the releases provided by the Plan; (i) all Holders of Claims who vote to reject the Plan and who do not opt out of the releases provided by the Plan; and (j) with respect to each of the foregoing parties under (a) through (i), such Entity and its current and former direct and indirect Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors,

managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such. For the avoidance of doubt, the term "Releasing Party" does not include Holders of Claims or Interests who are not entitled to vote on the Plan.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

Dated:  Houston, Texas
      December 21, 2018                     BY ORDER OF THE COURT

                                           **PORTER HEDGES LLP**

                          By:     */s/ John F. Higgins*
                                       John F. Higgins (TX 09597500)
                                       Joshua W. Wolfshohl (TX 24038592)
                                       M. Shane Johnson (TX 24083263)
                                       1000 Main Street, 36th Floor
                                       Houston, Texas 77002
                                       Telephone: (713) 226-6000
                                       Fax: (713) 226-6248

                                     **PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**

6979925v1